154 So. 50

**ANCHOR POST FENCE CO. v. WATSON.**

No. 32343.

March 26, 1934.

W. J. & H. W. Waguespack, of New Orleans, for appellant.

Spearing & McClendon, of New Orleans, for appellee.

O'NIELL, Chief Justice.

The Anchor Post Fence Company, of Baltimore, Md., is suing Miss Blanche Watson, of Covington, Ky., for the price of a fence constructed by the company on her property, in Cincinnati, Ohio. The civil district court in New Orleans got jurisdiction over the case by an attachment of some race horses belonging to Miss Watson, in New Orleans. She released the horses from seizure by furnishing a bond for $10,000, and then subjected her personal responsibility to the jurisdiction of the court by appearing and answering the suit. Her answer is that she did not order the fence, or authorize any one to order it for her, and in fact did not know it was ordered until some time after it was erected on her property. The amount claimed by the plaintiff is $6,306.76. The civil district court rendered a judgment of nonsuit, from which the plaintiff has appealed; and the defendant, answering the appeal, prays for a final rejection of the demand.

The plaintiff contends that George Remus, who resides in Cincinnati, and who actually. ordered the fence and attended to the erecting of it on Miss Watson's property, acted as her agent, and that she ratified the transaction by accepting the benefit of it, without making any protest or complaint before answering this suit. A witness named Samuel N. Holman, whose depositions were taken by commission, in New York City, testified, as a witness for the fence company, that he was a thoroughbred horse trainer and was in partnership with Miss Watson and George Remus, in the business of racing horses, at the time when the fence was ordered; that he, Holman, with the authority and in the presence of both Miss Watson and George Remus, commenced the negotiations for the fence by telephoning to the president of the Anchor Post Fence Company; that thereupon the president sent the company's Cincinnati representative, Leslie Eiffe, to Miss Watson; that he, Holman, introduced Eiffe to Miss Watson and George Remus, together, in Cincinnati; and that she, with George Remus, and with Eiffe and Holman, examined the company's catalogue of fences, and selected the fence to be erected on her property. If the testimony of Holman stood uncontradicted, being supported by the fact that Miss Watson has the fence on her property, the plaintiff would be entitled to a judgment for the price of the fence. But the testimony of Holman is contradicted by that of Miss Watson and by that of George Remus. They testified that they were never in partnership in any business, and that neither of them was ever in partnership with Holman. Miss Watson testified that Holman was merely her employee, as a horse trainer, when the fence

was ordered by Remus, and that she had discharged Holman before he gave his testimony in this case. She testified that she had not ordered the fence, had not negotiated with Eiffe or with any other representative of the fence company, had not authorized Remus to order the fence, was not aware of its being ordered or constructed on her property until some time after it was constructed, and that she protested to Remus when she next saw him after seeing the fence on her property. Remus, as a witness for Miss Watson, corroborated her testimony in every detail of any importance. The testimony of both of them is corroborated, in some measure, by the fact that the company's formal acknowledgment of the order for the fence was addressed to George Remus, and by the fact that the invoices were made out in his name and were sent to him by the Anchor Post Fence Company. Two officers of the company, in explanation, testified that it was noted on the order for the fence that the invoices were to be sent to George Remus. Leslie Eiffe, who sold the fence for the company, was not in the company's employ when the suit was filed; and it was admitted at the trial that Eiffe could not be located by the company, although the officers of the company had tried faithfully to find him for the purpose of obtaining his testimony.

The judge before whom the case was tried says, in his reasons for judgment, that he would have rejected the demand of the plaintiff finally if he had considered the testimony of Miss Watson and of George Remus worthy of belief, but that, from the way they had testified in another suit before his court, he did not consider their testimony in this case worthy of belief. We know nothing but

what the judge says about the veracity of Miss Watson or of George Remus. Their testimony to the effect that he had the fence constructed on her property for his own account, and without any consideration or authority from her, seems unlikely. But that is explained perhaps in some measure by the fact that Remus formerly owned the property on which the fence was built, and that he gave Miss Watson a quitclaim deed for his interest in it about four months before the fence was ordered, and that his daughter gave Miss Watson a quitclaim deed for her interest in the property about three months before the fence was ordered; and we infer from the testimony in the case—but with some doubt about it—that George Remus had resided on the property and was residing there yet when the fence was constructed.

Our conclusion is that the judge who heard the testimony was right in giving a judgment of nonsuit, so that the plaintiff might have the right to sue Miss Watson at her domicile, or sue George Remus at his domicile, if the plaintiff should elect hereafter to sue either of them for the price of the fence. The evidence in favor of the plaintiff, particularly without the testimony of Leslie Eiffe, is not deemed sufficient to warrant the rendering of a judgment against Miss Watson for the price of the fence. And the evidence in her favor, considering the comment of the judge who heard the testimony, is not deemed sufficient to warrant a final rejection of the plaintiff's demand.

The judgment is affirmed.

ST. PAUL, J., absent.